**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KYMBER CONSULTING GROUP, LLC, & DARA Z. JONES, <br><br> Plaintiffs, <br><br> v. <br><br> KYMBER M. CATO, <br><br> Defendant. | Civil Action No. 1:22-cv-1042 (JMC) |

## <u>MEMORANDUM OPINION</u>

Dara Jones owns and operates Kymber Consulting Group, LLC (KCG). Kymber Cato, whose first name bears an obvious resemblance to the name of Jones' company, allegedly experienced delusions that caused her to believe she owned KCG. Cato repeatedly contacted KCG's business partners and gained access to the accounts that KCG uses to manage its government contracting services. Hoping to put an end to Cato's business interference, Jones filed suit in this Court seeking to permanently enjoin Cato from misrepresenting her association with KCG. Cato did not respond to Jones' Complaint.

For the reasons stated below, the Court GRANTS Plaintiffs' Motion for Default Judgment and permanently enjoins Defendant from representing herself as an owner or associate of KCG; contacting Dara Jones or other associates of KCG; and using KCG's trademarks in any communications.[1]

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

## I.    BACKGROUND

Dara Jones owns and operates KCG, a Maryland LLC that does business with federal, state, and local governments.[2] ECF 1-3 at 1. KCG maintains an account on the federal government's System for Award Management (SAM) website to manage its government contracting services. ECF 1 ¶ 11. In March 2022, Jones reached out to SAM's IT helpdesk after receiving several phone calls from Kymber Cato, an individual who had previously tricked the helpdesk's employees into giving her access to KCG's account by claiming that KCG was her eponymous company. ECF 1-2. Apparently, due to delusions that she experienced, Cato believed that she owned KCG. ECF 1 ¶ 14. Cato's mistaken belief caused her to misrepresent her status to KCG's business partners and call Jones at unreasonable hours. *Id.* ¶¶ 12, 15. Jones ultimately sent a cease-and-desist letter to Cato. ECF 1-3. Cato's interference with Jones' business stopped for a time when she became incarcerated on unrelated charges. *See* ECF 1 ¶¶ 9, 18.

But in March 2022, after several years had passed without hearing from Cato, Jones again received multiple phone calls from her. *Id.* ¶ 9. Concerned that Cato's reemergence could harm her business interests, Jones filed this suit on April 13, 2022, seeking to permanently enjoin Cato from claiming to be affiliated with KCG; attempting to communicate with Jones; or using KCG's trademarks in her communications. ECF 1 at 7. Jones' Complaint alleged that Cato's actions violated federal trademark law, *see* 15 U.S.C. §§ 1114, 1116–18, and constituted tortious interference with contractual relations. *Id.* ¶¶ 26–27.

## II.    LEGAL STANDARD

---

[2] Because a "defendant is deemed to admit every well-pleaded allegation in the complaint" upon entry of default by the Court's clerk, the factual background summarized in this section relies upon the allegations included in Plaintiffs' Complaint. *Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)).

Federal Rule of Civil Procedure 55 lays out the two-step path to default judgment. First, pursuant to Rule 55(a), the clerk enters a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."

Second, Rule 55(b)(2) permits a court to enter default judgment if the non-defaulting party moves for that relief. Although the ultimate decision whether to grant default judgment is "committed to the sound discretion of the trial court," *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980), there are some constraints. Because there are "strong policies favoring the resolution of genuine disputes on their merits," *id.*, default judgments "must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 836 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Also, a court may not enter default judgment "against a minor or incompetent person" if they are not "represented by a general guardian, conservator, or other like fiduciary." Fed. R. of Civ. P. 55(b)(2). Finally, a court must assure itself that it has personal jurisdiction over the defendant, *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005), and subject matter jurisdiction over the case, *Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 56 (D.D.C. 2018). While the party seeking default judgment bears the burden of establishing both types of jurisdiction, they can rest their arguments on their pleadings because, upon entry of default, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *see also Mwani*, 417 F.3d at 7.

## III.   ANALYSIS

### A.  Prerequisites to Default Judgment

The Court enters default judgment against Cato because both steps of Rule 55 are satisfied. On September 21, 2022, the clerk's office entered Cato's default, fulfilling Rule 55(a). ECF 16. And the Court concludes that it is appropriate to exercise its discretion under Rule 55(b) to grant Plaintiffs' Motion for Default Judgment. Three considerations guide this latter determination: (1) Cato has not responded to Plaintiffs' Complaint within the allotted time; (2) the evidence does not indicate Cato is incompetent for purposes of Rule 55(b); and (3) the Court has personal jurisdiction over Cato and subject matter jurisdiction over this case.

Cato's time for responding to Plaintiffs' pleading has expired. Plaintiffs filed their Complaint on April 13, 2020, ECF 1, and served it on July 29, 2022. ECF 12. Pursuant to the 21-day time limit imposed by Federal Rule of Civil Procedure 12(a)(1)(A), Cato had until August 19, 2022, to respond to Plaintiffs' Complaint. *See* ECF 12 (noting in the Minute Order text that Cato's answer was due on August 19, 2022). When that day came and went without Cato's response, Plaintiffs were within their rights to seek default judgment.

The Court finds that Cato is not "incompetent" for purposes of Rule 55(b), a step it must take to enter default judgment against Cato because she is not represented by counsel. To determine the standard for competency, the Court looks to Federal Rule of Civil Procedure 17(b)(1), which says that the standard for determining an individual's capacity to be sued is governed by "the law of the individual's domicile" if that individual "is not acting in a representative capacity." Cato lives in Texas, ECF 1 ¶ 7, so the Court turns to the laws of that state. The Texas Code of Criminal Procedure states that "[a] defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc. Ann. art. 46B.003 (West 2004). This presumption can be overcome by showing that the person does not possess "sufficient present ability to consult with [their] lawyer with a

reasonable degree of rational understanding," or does not have "a rational as well as factual understanding of the proceedings against the person." *Id.* Although this case is civil, not criminal, the Court finds it appropriate to reference Texas' criminal standard for competency because the consequences of being found incompetent in a civil case are generally not as severe as those in a criminal case.

The delusions that Cato allegedly experienced do not overcome the presumption of competency articulated in Texas law. One of Cato's family members relayed to Jones' attorney that Cato had been "suffering from severe delusions for close to a year," resulting in Cato believing "that her identity [had been] stolen" and "used to open a business in her name." ECF 1-4 at 2. Cato had been contacting Jones and Jones' business partners to get back the business she thought she owned. *Id.* These allegations obviously raise some concerns about Cato's competency, but they do not provide sufficient evidence to overcome the presumption of competency under Texas law. The fact that Cato might have experienced delusions does not show, by a preponderance of the evidence, that she did not have a "rational [and] factual understanding of the proceedings against" her. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(a)(2) (West 2004). It is entirely possible for Cato to have experienced delusions that distorted her understanding of reality in one function of life while she remained lucid and rational in others. *Cf. Medina v. California*, 505 U.S. 437 (1992) (upholding the "preponderance of the evidence" standard for incompetence in criminal cases, resulting in a defendant being found competent despite experiencing hallucinations). If, at some point in the future, Cato provides additional evidence demonstrating her inability to understand these proceedings, she could move to set aside this default judgment under Federal Rule of Civil Procedure 60(b). *See* Fed. R. Civ. P. 55(c).

Finally, the Court concludes that the jurisdictional prerequisites to entering default judgment are also satisfied. As to personal jurisdiction, the Court finds that exercising specific personal jurisdiction over Cato comports with the District of Columbia's long-arm statute and "does not offend traditional notions of fair play and substantial justice." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). D.C.'s long-arm statue provides for personal jurisdiction when the defendant "caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code Ann. § 13-423(a)(3). Cato took action in the District of Columbia that caused tortious injury by interfering with business accounts, including KCG's SAM account, that are administered by governmental entities located in Washington, D.C. Cato's repeated misrepresentations to D.C. entities also establish "minimum contacts" with the forum, such that Cato "should reasonably anticipate being haled into court there." *Ferrara*, 54 F.3d at 828 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Court is also satisfied that it has subject matter jurisdiction over this action. One of Plaintiffs' claims arises under federal trademark law, thereby satisfying 28 U.S.C. § 1331. Additionally, diversity jurisdiction under 28 U.S.C. § 1332 exists because the parties are from different states and Plaintiff alleges that the amount in controversy exceeds $75,000.

### B. Permanent Injunction

Confident in the statutory and constitutional jurisdictional grounds of its judgment, the Court turns to the relief sought. To secure a permanent injunction, a plaintiff must demonstrate that: (1) they have suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest

6

would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Jones satisfies each of these requirements. Cato has repeatedly misrepresented herself as KCG's owner and tricked more than one of KCG's business partners into providing access to KCG's accounts. ECF 1 ¶ 12, 22–23, 32. That type of reputational harm, which cannot be cured through monetary damages, constitutes an existential threat to Jones' business sufficient to count as an irreparable injury. *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005) ("[R]eputational injury can be used to establish irreparable harm in certain circumstances."). Additionally, while the Court empathizes with the apparent medical conditions that cause Cato's mistaken beliefs, the balance of hardships tips in Jones' favor: in addition to the threats to her business, Jones' day-to-day life is also marred by Cato's harassing calls that come at all hours of the day. ECF 1 ¶¶ 15, 21. Finally, the Court finds no reason to think that issuance of a permanent injunction would disserve the public interest—people interested in doing business with KCG ought to know who actually owns the company.

## IV.    CONCLUSION

Plaintiff Dara Jones' Motion for Default Judgment is granted. Defendant Kymber Cato is permanently enjoined from representing herself as an owner or associate of KCG; contacting Dara Jones or other associates of KCG; and using KCG's trademarks in any communications.

A final, appealable order consistent with this Memorandum Opinion will issue separately.

**SO ORDERED.**

DATE: October 13, 2022

_____
Jia M. Cobb
U.S. District Court Judge